Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6559 facsimile
Email: mhigbee@higbeeassociates.com

*Attorney for Plaintiff,*
CHRISTOPHER SADOWSKI

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SADOWSKI<br><br>            Plaintiff,<br><br>v.<br><br>GREGORY PALUMBO d/b/a www.militarysupplyoutlet.com; DOES 1 through 10, inclusive,<br>            Defendant. | Case 2:18-cv-00792-JFW<br><br>**OPPOSITION TO MOTION TO SET ASIDE DEFAULT JUDGMENT**<br><br>Judge:         Hon. John F. Walter<br>Courtroom:  7A<br>Hearing Date: August 20, 2018<br>                       1:30 p.m.<br><br>Complaint Filed: January 31, 2018<br><br>Default Judgment Entered: June 11, 2018 |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................... 1

II. STATEMENT OF FACTS ..................................................................... 1

III. DEFENDANT'S CULPABLE CONDUCT LED TO THE ENRTY OF DEFAULT JUDGMENT ............................................................... 4

IV. DEFENDANT HAS NO MERITORIOUS DEFENSE TO LIABILITY ............................................................................................ 5

V. DEFENDANT'S CONDUCT HAS PREJUDICED PLAINTIFF ............. 10

VI. CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .............................. 8, 9

*Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996) ...................... 8, 9

*Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984) ............................... 10

*Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986) ...................................................... 3

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .......................................... 7

*Nilsson, Robbins et al. v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir. 1988) ....................................................................................................................... 11

*Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304 (2d Cir. 1963) ............................................................................................................... 7, 8, 10

*TCI Group Life Inss. Plan v. Knoebber,* 244 F.3d 691 (9th Cir. 2001) ...................... 6

*United States v. Signed Personal Check No. 730 of Yurban S. Mesle,* 615 F.3d 1085 (9th Cir. 2010) ........................................................................... 4, 6

**STATUTES**

17 U.S. Code § 504(c)(1) ............................................................................................ 9

**TREATISES**

Nimmer on Copyright § 12.04[A][1] ......................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant's Motion, raised before this Court 162 days after Defendant received actual notice of this lawsuit, represents the epitome of "too little, too late." Defendant has been aware of this lawsuit and his obligation to appear in this matter, since well before this Court's entry of Default Judgment. Now, after making a strategic choice to ignore this Court's default proceedings and being dissatisfied with the results, Defendant would like a second bite at the proverbial apple.

Defendant has no legal basis to obtain such relief because Defendant's delay in coming before this Court is not the result of "mistake, inadvertence or excusable neglect," but rather the result of Defendant's own "culpable conduct" warranting this Court's denial of Defendant's Motion without any further showing by Plaintiff.

Even on the merits, Defendant has presented no facts to support a meritorious defense sufficient for this Court to vacate the Default Judgment. On the contrary, Defendant is clearly liable and has admitted as such in his Declaration.

Defendant has sat on his rights, and this Court should require Defendant to live with the outcome rather than punish Plaintiff for Defendant's delay tactics. Plaintiff thus respectfully requests that this Court deny Defendant's Motion.

## II. STATEMENT OF FACTS

This is a copyright infringement lawsuit arising from Defendant Gregory Palumbo's ("Defendant") unauthorized use of a photo owned by Plaintiff Christopher Sadowski ("Plaintiff").

Sadowski is a professional photographer by trade. Sadowski has licensed or sold his photographs to dozens of major media outlets such as The New York Post, Boston Globe, Boston Herald, Los Angeles Times, Toronto Sun, Newsweek Magazine, People Magazine, the Associated Press, and USA Today. See Declaration of Ryan E. Carreon In Support of Motion for Default Judgment (Dkt. #18) ¶ 4.

Sadowski is the sole author and exclusive rights holder to a photograph of a US Coast Guard cutter patrolling New York Harbor (the "Image"). Sadowski registered the Image with the United States Copyright Office under registration number VA 2-000-106. *Id.* at ¶ 3, Exhibit A.

Sadowski regularly works as an independent contractor for the New York Post ("Post"). While on assignment for the Post, Sadowski often has the opportunity to capture unique and compelling photographs which allows Sadowski to build up his content library to which he retains the sole rights and which he routinely licenses to third-party news outlets. *Id.* at ¶ 6.

Defendant is the owner and operator of the website www.militarysupplyoutlet.com (Defendant's Website) which is an ecommerce site selling surplus military gear and accessories. *Id.* at ¶ 7.

On or about March 2017, Sadowski discovered that Defendant had used the Image with the photo credit removed on Defendant's Website. *Id.* at ¶10, Exhibit C.

On or about May 16, 2017 Plaintiff's counsel sent Defendant a cease and desist letter requesting, *inter alia*, that Defendant remove the Image from Defendant's Website and its server. Plaintiff's counsel made multiple attempts to contact Defendant by phone and email. Defendant initially responded but then refused to correspond with Plaintiff's counsel or remove the photo. On or about September 1, 2017, Plaintiff's counsel sent additional correspondence to Defendant again requesting that the Image be removed. *Id.* at ¶¶ 11-12.

On January 31, 2018, Sadowski filed the instant lawsuit. *See* Dkt. #1. At the time of the filing of the Complaint, Defendant still had not removed the Image. *See* Dkt. #1, Exhibit C.

That same day, Plaintiff's counsel sent an email to Defendant with a courtesy copy of the complaint attached. Defendant responded to the email admitting that he had used the Image on his website. Dkt. #18, ¶ 14, Exhibit D.

On March 11, 2018, the Summons and Complaint were served pursuant to

**OPPOSITION TO MOTION TO SET ASIDE DEFAULT JUDGMENT**
2

Rule 4 of the Federal Rules of Civil Procedure. On March 14, 2018, Plaintiff's counsel again emailed Defendant reminding him that service had been completed and alerting him to the deadline to file a responsive pleading. *Id.* at ¶¶ 15-16, Exhibit E.

On March 15, 2018, a Proof of Service was filed with the Court. *See* Dkt. #10. On April 6, 2018, Default was entered against Defendant. *See* Dkt. #14. Sadowski subsequently filed a Motion for Default Judgment on May 10, 2018. *See* Dkt. #18. When the Motion was filed, Sadowski's Image was still displayed on Defendant's Website. (*Id.* at Exhibit G) However, it has now apparently been removed.

On June 11, 2018, the Court entered Judgment in favor of Sadowski. See Dkt. #19-20.

The Ninth Circuit has expressly held that *"pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Thus, Palumbo's pro se status must not overshadow the merits (of lack thereof) of the instant Motion.

Federal Rule of Civil Procedure ("FRCP") 55(c), which governs the procedures related to the entry of default judgments, provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Under FRCP Rule 60(b)(1), a court may set aside a default judgment only for "mistake, inadvertence, surprise, or excusable neglect."

To determine whether excusable neglect could permit setting aside a default judgment, the court looks to three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party had no meritorious defense; or (3) whether reopening the default judgment will prejudice the other party. *See United States v. Signed Personal Check No. 730 of Yurban S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

Here, Defendant's own culpable conduct in intentionally ignoring multiple

notices of these proceedings has led to the entry of default judgment. Additionally, even if Defendant's conduct was not culpable, he has repeatedly admitted to committing copyright infringement, and has not meritorious defense. Finally, Reopening the default judgment at this late stage would cause great prejudice to Plaintiff.

### III. DEFENDANT'S CULPABLE CONDUCT LED TO THE ENRTY OF DEFAULT JUDGMENT

"A defendant's conduct is culpable *if he has received actual or constructive notice of the filing of the action and intentionally failed to answer.*" *Ibid.* (emphasis added, citations omitted). The timeline advanced by Defendant in its Motion to Set Aside as well as the evidence proffered by Plaintiff in its Motion for Default Judgment leaves little doubt that Defendant had both actual and constructive notice of both the Entry of Default, and Request for Default Judgment and failed to take any action prior to the entry of default or the Motion for Default Judgment.

As an initial matter, between May 11, 2017 and the filing of this lawsuit, Plaintiff's counsel made multiple attempts to resolve this matter with Defendant without resorting to litigation, and even spoke with Defendant over the phone. Dkt #18, ¶¶ 11-12.

After the lawsuit was filed, Plaintiff's counsel sent Defendant repeated notice by email, of the deadlines to file a responsive pleading, which Defendant admits to receiving and responding to [1]. *See* Dkt. #18, Exhibits D and E; Declaration of Gregory Palumbo.

---

[1] In his Motion, Defendant state that he became aware of this lawsuit on approximately May 20, 2018, however this statement in contradicted by his admission in his declaration to receiving and responding to Plaintiff's counsel's email correspondence on January 31, 2018, which contained a conformed copy of the Complaint and Exhibits which had been filed earlier that day. Additionally, the email address and physical address included by Defendant on his opposition papers match the physical address where the Summons and Complaint were served, and the email address that Plaintiff's counsel corresponded with.

1  Additionally, after having months of notice to the pending litigation, Defendant was properly served with process on March 11th, 2018 and a copy of the papers was also sent to his residence by mail on March 13th, 2018. *See* Dkt. #10. Such service was procedurally proper in accordance with the requirements of California Code of Civil Procedure 415.20(b) and Federal Rules of Civil Procedure, Rule 4(e)(1) and (2)(B).

Plaintiff filed a Request for Entry of Default on April 5th and served notice to Defendant by mail. Dkt. #13. The next day, the Clerk entered default. Over one month later, on May 10th, 2018, Plaintiff filed a Motion for Default Judgment and sent notice to Defendant. Dkt. #18.

In order to explain his failure to take any action prior to the filing of his Motion to Set Aside, Defendant states in his declaration that after being altered to the notice of default, he "must [have] missed prior notices" due to allegedly going through a foreclosure. While regrettable if true, Defendant admits that he received Plaintiff's counsel's January emails alerting him to the pending litigation, which included conformed copies of the initiating documents, and that he corresponded with Plaintiff's counsel thereafter. After Defendant was served, Plaintiff's counsel sent a follow up email in March alerting Defendant that the paperwork had been delivered to his residence and informing him of the deadline to file an answer, and Plaintiff's counsel's expressly stated intent to seek a default judgment if an answer was not filed. *See* Dkt. #18, Exhibit E. Thus, even if Defendant "missed" the repeated notices sent by mail, Defendant had both constructive and actual knowledge that the lawsuit had been filed, that it had been served, and that he was obligated to file an answer or risk default judgment. Therefore, Defendant's conduct is culpable and setting aside the default judgment would be improper.

**IV.    DEFENDANT HAS NO MERITORIOUS DEFENSE TO LIABILITY**

Even if Defendant could somehow justify his failure to respond, Defendant's

Motion should also be denied because he has not demonstrated a meritorious defense, which is required to vacate a default judgment. Quite the opposite, Defendant's own declaration demonstrates his liability.

In order to satisfy the "meritorious defense" requirement, "a Defendant must allege facts that, if true, **would constitute a defense**." *Signed Pers. Check No. 730*, 615 F.3d at 1094, *TCI Group Life Inss. Plan v. Knoebber,* 244 F.3d 691, 700 (9th Cir. 2001) (emphasis added). Defendant has alleged four "defenses" which ostensibly serve to defeat liability in this case. *See* Palumbo Decl. ¶6. As will be shown below, Defendant has not alleged sufficient facts to demonstrate that any of its purported defenses would be sufficiently meritorious to justify setting aside the default judgment.

Defendant's first defense is that "[w]hen I was emailed by the Attorney [sic] on January 31, 2018, I immediately emailed him back within a few hours and had the image removed from the page." Palumbo Decl. ¶6.

As has been shown in Plaintiff's Motion for Default Judgment, Defendant had not in fact ceased the infringing conduct. Dkt. #18, Exhibit G. Even if he had, simply removing the Image is no defense to Defendant's prior infringing activities.

Defendant's second "Defense" is that the Image "was on a blog page created by my Web designer in the Philippines." Palumbo Decl. ¶6.

However, Defendant may still properly be found liable under a theory of vicarious infringement. The Supreme Court has noted that vicarious liability "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 n.9 (2005). In support of this statement, the Supreme Court cited *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 308 (2nd Cir. 1963), a case which provides this helpful explanation of the strict-liability policy of copyright law:

> [T]he cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income. He is liable whether the bandleader is considered, as a technical matter, an employee or an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.
>
> We believe that the principle which can be extracted from the dance hall cases is a sound one . . . . Green licensed one facet of its variegated business enterprise, for some thirteen years, to the Jalen Amusement Company. Green retained the ultimate right of supervision over the conduct of the record concession and its employees. By reserving for itself a proportionate share of the gross receipts from Jalen's sales of phonograph records, Green had a most definite financial interest in the success of Jalen's concession; 10% or 12% of the sales price of every record sold by Jalen, whether "bootleg" or legitimate, found its way -- both literally and figuratively -- into the coffers of the Green Company. We therefore conclude . . . that Green's relationship to its infringing licensee, as well as its strong concern for the financial success of the phonograph record concession, renders it liable for the unauthorized sales of the "bootleg" records.
>
> The imposition of liability upon the Green Company, even in the absence of an intention to infringe or knowledge of infringement, is not unusual. As one observer has noted, "Although copyright infringements are quite generally termed piracy, only a minority of infringers fly the Jolly Roger." While there have been some complaints concerning the harshness of the principle of strict liability in copyright law, courts have consistently refused to honor the defense of absence of knowledge or intention. The reasons have been variously stated. "The protection accorded literary property would be of little value if . . . insulation from payment of damages could be secured . . . by merely refraining from making inquiry." "It is the innocent infringer who must suffer, since he, unlike the copyright owner, either has an opportunity to guard against the infringement (by diligent inquiry), or at least the ability to guard against the infringement (by an indemnity agreement . . . and/or by insurance)."

*Shapiro,* 316 F.2d at 307-08 (citations omitted); *see Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261-64 (9th Cir. 1996) (following *Shapiro* and referring to it as the "landmark case" on vicarious liability for copyright infringement).

Here, there is no question that Defendant both had the right and ability to supervise the direct infringer, and had a direct financial interest in the infringement such to confer vicarious liability.

The first half of the test for vicarious liability asks whether the defendant had "the right and ability to supervise the infringing conduct." The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise. *A&M Records v. Napster, Inc.*, 239 F.3d 1004,

1023 (9th Cir. 2001); *see Fonovisa*, 76 F.3d at 262 ("Cherry Auction had the right to terminate vendors for any reason whatsoever and through that right had the ability to control the activities of vendors on the premises.").

Here, Defendant states in this declaration that within a few hours of receiving Plaintiff's counsel's January 31 email, he "had the Images removed from the page." Palumbo Decl. ¶ 6. Thus, even if Defendant did not directly cause the Image to be placed on the website, according to his own testimony, he had the right and ability to cause it to be removed.

The second prong considers whether a defendant has a financial interest in the infringing activity. Financial benefit exists where the availability of infringing material "acts as a 'draw' for customers." *Fonovisa*, 76 F.3d at 263-64 (stating that financial benefit may be shown "where infringing performances enhance the attractiveness of a venue"). In fact, the financial benefit prong may be satisfied even if an infringer does not actually reap tangible profits. *See Napster, Inc.*, 239 F.3d at 1023 (Despite offering free music downloads, ample evidence supports the district court's finding that Napster's future revenue is dependent upon "increases in user-base."); Nimmer on Copyright § 12.04[A][1](The broad definition of "direct financial benefit" would encompass even a "future hope to 'monetize.'")

Here, Defendant's Website is an ecommerce site selling surplus military gear and accessories. Dkt. # at ¶ 7. Paid advertising is visible in the screenshot of the infringing web page attached as Exhibit C to Plaintiff's Motion for Default Judgment. Even if no monies were actually reaped by Defendant, the infringing webpage no doubt acted as a draw for potentially paying customers.

Thus, Defendant would be vicariously liable for the activities alleged.

Defendant's third "defense" is that "[t]here were no sales offers on this page, it was strictly informational." Palumbo Decl. ¶ 6. As explained above, Defendant's Website is an ecommerce site and the infringing webpage in question contained paid advertisements. Even still, whether or not any sales were offered or

1  consummated through Defendant's Website is irrelevant, as commercial
2  exploitation is not an element of any of Plaintiff's claims.

3  Defendant's final "defense" is that the "cost of licensing a similar image …
4  is on average between $20 to $200." Palumbo Decl. ¶ 6. Such an argument goes to
5  the overall amount of actual damages, and it not a meritorious defense to the
6  infringing conduct outlined in the Default Judgment. Even taking Defendant's
7  contentions as true, Defendant did not infringe the "similar" images that he proffers
8  in his Declaration, rather Defendant infringed on Plaintiff's Image. Plaintiff
9  provided invoices demonstrating the actual value of his photographs. The value of
10 other photographs is irrelevant. By infringing on Plaintiff's Image, for which
11 Defendant paid nothing let alone $20 to $200, Defendant took a risk as to the actual
12 licensing value. Even still, Plaintiff elected to be awarded statutory damages and
13 not actual damages and the Court is empowered to make any award within the
14 permissible statutory range "as the court considers just." 17 U.S. Code § 504(c)(1);
15 *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) ("The court has
16 wide discretion in determining the amount of statutory damages to be awarded,
17 constrained only by the specified maxima and minima.").

18 Even for uninjurious and unprofitable invasions of copyright the court may
19 impose a liability within statutory limits to sanction and vindicate the statutory
20 policy. Indeed, "[t]he imposition of liability ... even in the absence of an intention
21 to infringe or knowledge of infringement, is not unusual ... It is the innocent
22 infringer who must suffer, since he, unlike the copyright owner, either has an
23 opportunity to guard against the infringement (by diligent inquiry), or at least the
24 ability to guard against the infringement (by an indemnity agreement and/or by
25 insurance)." *Shapiro,* 316 F.2d at 308 (quotation and citation omitted).

26 Thus Defendant has not demonstrated that he has a meritorious defense and
27 the Motion to Set Aside the Default should be denied.

28

## V. DEFENDANT'S CONDUCT HAS PREJUDICED PLAINTIFF

Plaintiff respectfully submits that it will be prejudiced if the Court now gives Defendant the opportunity to file an answer asserting meritless defenses. This Court may condition relief from a default judgment "upon such terms as are just." Fed. R. Civ. P. 60(b). Courts are allowed to impose conditions on the setting aside of a default, as well as upon vacating a default judgment. *Nilsson, Robbins et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1546-1547 (9th Cir. 1988) ("we now hold that it is appropriate to condition setting aside a default upon the payment of a sanction."). On appeal in *Nilsson* was the district court's requirement, as a condition of granting relief from default, that the defaulting party pay the plaintiff's attorney's fees. In affirming, the Ninth Circuit noted:

> By conditioning the setting aside of a default, any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation can be rectified. According to Wright, Miller & Kane, the most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues. Courts have eased these burdens by requiring the defaulting party to provide a bond to pay costs, to pay court costs, or to cover the expenses of the appeal. The use of imposing conditions can serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences.
> …
> The condition most commonly imposed is that the defendant reimburse the plaintiff for costs incurred because of the default. In some cases, it may also be appropriate for the defendant to be required to post bond to secure the amount of the default judgment pending a trial on the merits.

*Id.* at 1547 (internal citations omitted).

As set forth in the original default judgment, Plaintiff incurred $1,995.25 in attorneys' fees and costs in attorney's fees and costs *exclusive* of its Opposition to the instant Motion and subsequent post judgment collection efforts.

Outside of counsel's initial investigation, the preparation and filing of the Complaint, and the entry of default, the rest of these activities will have been for naught if Defendant is relieved of its default. In addition to all of Plaintiff's futile post-default activities, Plaintiff's Motion for Default Judgment will have been wasted. Moreover, Plaintiff has incurred additional fees in connection with

opposing the instant Motion.

Plaintiff lacks a boundless budget to fund this litigation. If Defendant gets the "do over" that he seeks through this Motion, equity requires that Plaintiff be returned to the same position had Defendant timely responded to the Complaint. All of Plaintiff's other fees and costs must be recouped. Otherwise, Plaintiff is necessarily compromised in its ability to pursue this action.

Defendant should not be rewarded with a tactical advantage, i.e., forcing Plaintiff to needlessly incur unrecompensed legal expenses, as a consequence of his default and subsequent relief. Plaintiff must be restored to the *status quo ante* just as Defendant asks for himself.

If the Court is inclined to grant Defendant's Motion, Plaintiff respectfully requests that it be allowed to submit a declaration from counsel of the additional fees incurred in this action.

## VI. CONCLUSION

For all of the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Set Aside the Default Judgment.

DATED: July 26, 2018          Respectfully submitted,

**/s/ *Ryan E. Carreon***
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705
(714) 617-8325
*Counsel for Plaintiff*

**OPPOSITION TO MOTION TO SET ASIDE DEFAULT JUDGMENT**
11

Case 2:18-cv-00792-JFW-FFM   Document 25   Filed 07/26/18   Page 15 of 15   Page ID #:161

# **CERTIFICATE OF SERVICE**

I, the undersigned, say:

    I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action.

    My business address is 1504 Brookhollow Dr., Ste 113, Santa Ana, California, 92705.

    On July 26, 2018, I caused to be served the foregoing **Opposition to Request to Set Aside Default Judgment, Declaration of Ryan E. Carreon** on all parties in this action as follows:

X    BY MAIL: I sent a conformed copy of the above titled documents postage prepaid in a sealed envelope via first class mail address as follows:

**Gregory Palumbo**
5167 Llano Drive
Woodland Hills, CA 91364

    I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on July 26, 2018, at Santa Ana, California.

    */s/ Ryan E. Carreon*
    Ryan E. Carreon, Esq.
    *Counsel for Plaintiff*

---

**OPPOSITION TO MOTION TO SET ASIDE DEFAULT JUDGMENT**

2