Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6559 facsimile
Email: mhigbee@higbeeassociates.com

*Attorney for Plaintiff,*
CHRISTOPHER SADOWSKI

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SADOWSKI<br><br>Plaintiff,<br><br>v.<br><br>GREGORY PALUMBO d/b/a www.militarysupplyoutlet.com; DOES 1 through 10, inclusive,<br>Defendant. | Case 2:18-cv-00792-JFW<br><br>**NOTICE OF LODGING OF [PROPOSED] STATEMENT OF DECISION**<br><br>Judge:          Hon. John F. Walter<br>Courtroom:   7A<br>Hearing Date:   August 20, 2018<br>                        1:30 p.m.<br><br>Complaint Filed: January 31, 2018<br><br>Default Judgment Entered: June 11, 2018 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR**

**COUNSEL OF RECORD: PLEASE TAKE NOTICE** that Plaintiff Christopher

Sadowski ("Sadowski") lodged with the Court a "[Proposed] Statement of

Decision" in connection with Defendant Gregory Palumbo's Motion to Set Aside

the Default Judgment (Dkt. 22). Sadowski attaches a true copy of the Proposed

Statement of Decision as Exhibit 1 to this Notice.


DATED: August 10, 2018                    Respectfully submitted,

                                          **/s/ *Ryan E. Carreon***
                                          Ryan E. Carreon, Esq.
                                          Cal. Bar No. 311668
                                          **HIGBEE & ASSOCIATES**
                                          1504 Brookhollow Dr., Ste 112
                                          Santa Ana, CA 92705
                                          (714) 617-8325
                                          *Counsel for Plaintiff*

# EXHIBIT 1

1  Mathew K. Higbee, Esq., SBN 241380
   Ryan E. Carreon, Esq., SBN 311668
2  **HIGBEE & ASSOCIATES**
   1504 Brookhollow Dr., Suite 112
3  Santa Ana, CA 92705
4  (714) 617-8336
   (714) 597-6559 facsimile
5  Email: mhigbee@higbeeassociates.com

6
   *Attorney for Plaintiff,*
7  CHRISTOPHER SADOWSKI

8

9              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
10

11
   CHRISTOPHER SADOWSKI          Case 2:18-cv-00792-JFW
12
                                  **[PROPOSED] STATEMENT OF**
13           Plaintiff,           **DECISION**

14 v.                             Judge:        Hon. John F. Walter
                                  Courtroom:    7A
15                                Hearing Date: August 20, 2018
   GREGORY PALUMBO d/b/a                        1:30 p.m.
16 www.militarysupplyoutlet.com; DOES
   1 through 10, inclusive,       Complaint Filed: January 31, 2018
17
             Defendant.           Default Judgment Entered: June 11, 2018
18

19

20

21

22

23

24

25

26

27

28

                      **[PROPOSED] STATEMENT OF DECISION**
                                      i

## I.      STATEMENT OF FACTS

This is a copyright infringement lawsuit arising from Defendant Gregory Palumbo's ("Defendant") unauthorized use of a photo owned by Plaintiff Christopher Sadowski ("Plaintiff").

Sadowski is a professional photographer by trade. Sadowski has licensed or sold his photographs to dozens of major media outlets such as The New York Post, Boston Globe, Boston Herald, Los Angeles Times, Toronto Sun, Newsweek Magazine, People Magazine, the Associated Press, and USA Today.

Sadowski is the sole author and exclusive rights holder to a photograph of a US Coast Guard cutter patrolling New York Harbor (the "Image"). Sadowski registered the Image with the United States Copyright Office under registration number VA 2-000-106.

Sadowski regularly works as an independent contractor for the New York Post ("Post"). While on assignment for the Post, Sadowski often has the opportunity to capture unique and compelling photographs which allows Sadowski to build up his content library to which he retains the sole rights and which he routinely licenses to third-party news outlets.

Defendant is the owner and operator of the website www.militarysupplyoutlet.com (Defendant's Website) which is an ecommerce site selling surplus military gear and accessories.

On or about March 2017, Sadowski discovered that Defendant had used the Image with the photo credit removed on Defendant's Website.

On or about May 16, 2017 Plaintiff's counsel sent Defendant a cease and desist letter requesting, *inter alia*, that Defendant remove the Image from Defendant's Website and its server. Plaintiff's counsel made multiple attempts to contact Defendant by phone and email. Defendant initially responded but then refused to correspond with Plaintiff's counsel or remove the photo. On or about September 1, 2017, Plaintiff's counsel sent additional correspondence to Defendant

again requesting that the Image be removed.

On January 31, 2018, Sadowski filed the instant lawsuit. At the time of the filing of the Complaint, Defendant still had not removed the Image.

That same day, Plaintiff's counsel sent an email to Defendant with a courtesy copy of the complaint attached. Defendant responded to the email admitting that he had used the Image on his website.

On March 11, 2018, the Summons and Complaint were served pursuant to Rule 4 of the Federal Rules of Civil Procedure. On March 14, 2018, Plaintiff's counsel again emailed Defendant reminding him that service had been completed and alerting him to the deadline to file a responsive pleading.

On March 15, 2018, a Proof of Service was filed with the Court. On April 6, 2018, Default was entered against Defendant. Sadowski subsequently filed a Motion for Default Judgment on May 10, 2018.

On June 11, 2018, the Hon. John F. Walter entered Judgment in favor of Sadowski awarding $30,000 in damages, and $1,995.25 in attorneys fees and costs.

On July 19, 2018, Defendant filed a Motion to Set Aside the Entry of Default and Set Aside the Default Judgment. Plaintiff timely filed an Opposition on July 27, 2018. Defendant did not file a Reply.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(c), which governs the procedures related to the entry of default judgments, provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Under FRCP Rule 60(b)(1), a court may set aside a default judgment only for "mistake, inadvertence, surprise, or excusable neglect."

To determine whether excusable neglect could permit setting aside a default judgment, the court looks to three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party

1    had no meritorious defense; or (3) whether reopening the default judgment will

2    prejudice the other party. *See United States v. Signed Personal Check No. 730 of*

3    *Yurban S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). "A defendant's conduct is

4    culpable if he has received ***actual or constructive notice of the filing of the action***

5    and intentionally failed to answer**.**" *Ibid*. (emphasis added, citations omitted).

6        The Ninth Circuit has expressly held that *"pro se* litigants in the ordinary

7    civil case should not be treated more favorably than parties with attorneys of

8    record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

9        Here, Defendant's own culpable conduct in intentionally ignoring multiple

10   notices of these proceedings has led to the entry of default judgment. Additionally,

11   even if Defendant's conduct was not culpable, he has repeatedly admitted to

12   committing copyright infringement, and has not meritorious defense. Finally,

13   Reopening the default judgment at this late stage would cause great prejudice to

14   Plaintiff.

15       **A.    Defendant's failure to participate in these proceedings is not the
16           result of mistake, inadvertence, surprise, or excusable neglect.**

17       The timeline advanced by Defendant in its Motion to Set Aside as well as the

18   evidence proffered by Plaintiff in its Motion for Default Judgment leaves little

19   doubt that Defendant had both actual and constructive notice of both the filing of

20   this action, and the subsequent default proceedings. Despite substantial notice,

21   Defendant failed to take any action prior to the entry of default or the Motion for

22   Default Judgment.

23       Between May 11, 2017 and the filing of this lawsuit, Plaintiff's counsel made

24   multiple attempts to resolve this matter with Defendant without resorting to

25   litigation, and even spoke with Defendant over the phone. After the lawsuit was

26   filed, Plaintiff's counsel sent Defendant repeated notice by email, of the deadlines

27   to file a responsive pleading, which Defendant admits to receiving and responding

28   to.

1    After having months of notice to the pending litigation, Defendant was
2    properly served with process on March 11th, 2018 and a copy of the papers was also
3    sent to his residence by mail on March 13th, 2018. *See* Dkt. #10. Such service was
4    procedurally proper in accordance with the requirements of California Code of
5    Civil Procedure 415.20(b) and Federal Rules of Civil Procedure, Rule 4(e)(1) and
6    (2)(B).

7    Plaintiff filed a Request for Entry of Default on April 5th and served notice to
8    Defendant by mail at the same address where Defendant was served and the same
9    address appearing on Defendant's moving papers. The next day, the Clerk entered
10   default. Over one month later, on May 10th, 2018, Plaintiff filed a Motion for
11   Default Judgment and sent notice to Defendant at the same address.

12   In order to explain his failure to take any action prior to the filing of his
13   Motion to Set Aside, Defendant states in his declaration that after being altered to
14   the notice of default, he "must [have] missed prior notices" due to allegedly going
15   through a foreclosure. While regrettable if true, Defendant admits that he received
16   Plaintiff's counsel's January emails alerting him to the pending litigation, which
17   included conformed copies of the initiating documents, and that he corresponded
18   with Plaintiff's counsel thereafter.

19   After Defendant was served with process, Plaintiff's counsel sent a follow up
20   email in March alerting Defendant that the paperwork had been delivered to his
21   residence and informing him of the deadline to file an answer, and Plaintiff's
22   counsel's expressly stated intent to seek a default judgment if an answer was not
23   filed. Thus, even if Defendant "missed" the repeated notices sent by mail,
24   Defendant had both constructive and actual knowledge that the lawsuit had been
25   filed, that it had been served, and that he was obligated to file an answer or risk
26   default judgment.

27   Therefore, Defendant's conduct is culpable and setting aside the default
28   judgment would be improper.

**B.      Defendant has no meritorious defense to Plaintiff's allegations.**

Even if Defendant could justify his failure to respond, Defendant has not demonstrated a meritorious defense, which is required to vacate a default judgment.

In order to satisfy the "meritorious defense" requirement, "a Defendant must allege facts that, if true, ***would constitute a defense***." *Signed Pers. Check No. 730*, 615 F.3d at 1094, *TCI Group Life Inss. Plan v. Knoebber,* 244 F.3d 691, 700 (9th Cir. 2001) (emphasis added). Defendant has alleged four "defenses" which ostensibly serve to defeat liability in this case, however Defendant has not alleged sufficient facts to demonstrate that any of its purported defenses would be sufficiently meritorious to justify setting aside the default judgment.

Defendant's first defense is that "[w]hen I was emailed by the Attorney [sic] on January 31, 2018, I immediately emailed him back within a few hours and had the image removed from the page." Despite this statement, the evidence proffered by Plaintiff in his Motion for Default Judgment demonstrated that Defendant had not in fact ceased the infringing conduct. Even if he had, simply removing the Image is no defense to Defendant's prior infringing activities.

Defendant's second "Defense" is that the Image "was on a blog page created by my Web designer in the Philippines." Defendant proffered no evidence of this other than his own conclusory statement, however, Defendant may still properly be found liable under a theory of vicarious infringement.

The Supreme Court has noted that vicarious liability "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 n.9 (2005). In support of this statement, the Supreme Court cited *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 308 (2nd Cir. 1963), a case which provides this helpful explanation of the strict-liability policy of copyright law:

> [T]he cases are legion which hold the dance hall proprietor liable for

the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income. He is liable whether the bandleader is considered, as a technical matter, an employee or an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.

We believe that the principle which can be extracted from the dance hall cases is a sound one . . . . Green licensed one facet of its variegated business enterprise, for some thirteen years, to the Jalen Amusement Company. Green retained the ultimate right of supervision over the conduct of the record concession and its employees. By reserving for itself a proportionate share of the gross receipts from Jalen's sales of phonograph records, Green had a most definite financial interest in the success of Jalen's concession; 10% or 12% of the sales price of every record sold by Jalen, whether "bootleg" or legitimate, found its way -- both literally and figuratively -- into the coffers of the Green Company. We therefore conclude . . . that Green's relationship to its infringing licensee, as well as its strong concern for the financial success of the phonograph record concession, renders it liable for the unauthorized sales of the "bootleg" records.

The imposition of liability upon the Green Company, even in the absence of an intention to infringe or knowledge of infringement, is not unusual. As one observer has noted, "Although copyright infringements are quite generally termed piracy, only a minority of infringers fly the Jolly Roger." While there have been some complaints concerning the harshness of the principle of strict liability in copyright law, courts have consistently refused to honor the defense of absence of knowledge or intention. The reasons have been variously stated. "The protection accorded literary property would be of little value if . . . insulation from payment of damages could be secured . . . by merely refraining from making inquiry." "It is the innocent infringer who must suffer, since he, unlike the copyright owner, either has an opportunity to guard against the infringement (by diligent inquiry), or at least the ability to guard against the infringement (by an indemnity agreement . . . and/or by insurance)."

*Shapiro,* 316 F.2d at 307-08 (citations omitted); *see Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261-64 (9th Cir. 1996) (following *Shapiro* and referring to it as the "landmark case" on vicarious liability for copyright infringement).

Here, there is no question that Defendant both had the right and ability to supervise the direct infringer, and had a direct financial interest in the infringing activity such to confer vicarious liability.

The first half of the test for vicarious liability asks whether the defendant had "the right and ability to supervise the infringing conduct." The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise. *A&M Records v. Napster, Inc.,* 239 F.3d 1004, 1023 (9th Cir. 2001); *see Fonovisa,* 76 F.3d at 262 ("Cherry Auction had the right to

1  terminate vendors for any reason whatsoever and through that right had the ability

2  to control the activities of vendors on the premises.").

3       Here, Defendant states in this declaration that within a few hours of receiving

4  Plaintiff's counsel's January 31 email, he "had the Images removed from the page."

5  Thus, even if Defendant did not directly cause the Image to be placed on the

6  website, according to his own testimony, he had the right and ability to cause it to

7  be removed.

8       The second prong considers whether a defendant has a financial interest in

9  the infringing activity. Financial benefit exists where the availability of infringing

10  material "acts as a 'draw' for customers." *Fonovisa*, 76 F.3d at 263-64 (stating that

11  financial benefit may be shown "where infringing performances enhance the

12  attractiveness of a venue"). In fact, the financial benefit prong may be satisfied even

13  if an infringer does not actually reap tangible profits. *See Napster, Inc.*, 239 F.3d at

14  1023 (Despite offering free music downloads, ample evidence supports the district

15  court's finding that Napster's future revenue is dependent upon "increases in user-

16  base."); Nimmer on Copyright § 12.04[A][1](The broad definition of "direct

17  financial benefit" would encompass even a "future hope to 'monetize.'")

18       Here, Defendant's Website is an ecommerce site selling surplus military gear

19  and accessories. Paid advertising is visible in the screenshot of the infringing web

20  page attached as Exhibit C to Plaintiff's Motion for Default Judgment. Even if no

21  monies were actually reaped by Defendant, the infringing webpage no doubt acted

22  as a draw for potentially paying customers.

23       Thus, Defendant would be vicariously liable for the activities alleged.

24       Defendant's third "defense" is that "[t]here were no sales offers on this page,

25  it was strictly informational." Palumbo Decl. ¶ 6. As explained above, Defendant's

26  Website is an ecommerce site and the infringing webpage in question contained

27  paid advertisements. Even still, whether or not any sales were offered or

28  consummated    through    Defendant's    Website    is    irrelevant,    as    commercial

exploitation is not an element of any of either of the causes of action alleged by Plaintiff.

Defendant's final "defense" is that the "cost of licensing a similar image … is on average between $20 to $200." Such an argument goes to the overall amount of actual damages, and it not a meritorious defense to the infringing conduct outlined in the Default Judgment. Even taking Defendant's contentions as true, Defendant did not infringe the "similar" images that he proffers in his Declaration, rather Defendant infringed on Plaintiff's Image. Plaintiff provided invoices demonstrating the actual value of his photographs. The value of other photographs is irrelevant. By infringing on Plaintiff's Image, for which Defendant paid nothing let alone $20 to $200, Defendant took a risk as to the actual licensing value. Even still, Plaintiff elected to be awarded statutory damages and not actual damages and the Court is empowered to make any award within the permissible statutory range "as the court considers just." 17 U.S. Code § 504(c)(1); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) ("The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.").

Even for uninjurous and unprofitable invasions of copyright the court may impose a liability within statutory limits to sanction and vindicate the statutory policy. Indeed, "[t]he imposition of liability ... even in the absence of an intention to infringe or knowledge of infringement, is not unusual ... It is the innocent infringer who must suffer, since he, unlike the copyright owner, either has an opportunity to guard against the infringement (by diligent inquiry), or at least the ability to guard against the infringement (by an indemnity agreement and/or by insurance)." *Shapiro,* 316 F.2d at 308 (quotation and citation omitted).

/ / /

/ / /

/ / /

1        Because Defendant has not made the requisite showing, Defendant's Motion

2    to Set Aside the Entry of Default and Set Aside the Default Judgment is hereby

3    **DENIED.**

4

5

6    Date: _____      _____

7                                           Hon. John F. Walter
                                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
## CERTIFICATE OF SERVICE

3
I, the undersigned, say:

4
    I am a citizen of the United States and I am a member of the Bar of this

5
Court. I am over the age of 18 and not a party to the within action.

6
    My business address is 1504 Brookhollow Dr., Ste 113, Santa Ana,

7
California, 92705.

8
    On August 10, 2018, I caused to be served the foregoing **PROPOSED**

9
**STATEMENT OF DECISION** on all parties in this action as follows:

10
X    BY MAIL: I sent a conformed copy of the above titled documents postage
prepaid in a sealed envelope via first class mail address as follows:

11

12
**Gregory Palumbo**
5167 Llano Drive

13
Woodland Hills, CA 91364

14

15
    I certify under penalty of perjury under the laws of the United States that the

16
foregoing is true and correct.  Executed on August 10, 2018, at Santa Ana,
California.

17

18
                            */s/ Ryan E. Carreon*
                            Ryan E. Carreon, Esq.

19
                            *Counsel for Plaintiff*

20

21

22

23

24

25

26

27

28